Deborah L. STREET and Okeema
Heise, Appellants–Plaintiffs,

v.

SHOE CARNIVAL, INC. and Randall
C. Wright, Appellees–Defendants.

No. 49A02–9503–CV–154.

Court of Appeals of Indiana.

Jan. 29, 1996.

Patrick M. O'Brien, Brett Ryan Fleitz, Kevin G. Harvey, Steers Sullivan, P.C., Indianapolis, for Appellants.

Richard S. Ewing, Thomas W. Blessing, Stewart & Irwin, Indianapolis, for Appellees.

## OPINION

ROBERTSON, Judge.

Deborah L. Street and Okeema Heise appeal the grant of summary judgment in favor of Shoe Carnival, Inc. and Randall C. Wright (collectively, Shoe Carnival). They present the following issues:

    I.    The trial court erred when it ruled that Appellants–Plaintiffs' claims for false imprisonment present no genuine issue of material fact for trial and entered summary judgment in Appellees–Defendants' favor on said claims.

    II.    The trial court erred when it ruled that Appellants–Plaintiffs' claims for defa-

mation present no genuine issue of material fact for trial and entered summary judgment in favor of Appellees–Defendants' favor on said claims.

III. The trial court erred when it ruled that Appellant–Plaintiff Okeema Heise's claim for punitive damages presents no genuine issue of material fact for trial and entered summary judgment in Appellees–Defendant's favor on said claim.

We reverse.

The disposition of a case by summary judgment is appropriate only when no genuine issues of material fact exist and the proponent is entitled to judgment as a matter of law. *Lewis v. City of Indianapolis* (1990), Ind.App., 554 N.E.2d 13, *trans. denied.* When the court determines the propriety of summary judgment, it accepts as true all the facts which support the nonmovant and resolves all doubts in its favor. *Chester v. Indianapolis Newspapers* (1990), Ind.App., 553 N.E.2d 137, *trans. denied.*

The evidence most favorable to Street and Heise shows that they entered a Shoe Carnival store with Heise's husband and with two of the Heises' children. They shopped for merchandise, and Mr. Heise found some shoes for himself. Heise wanted some shoes for herself and the children, so Mr. Heise planned to go to the bank for some more money.

Heise found some shoes for the children and gave them to the children to hold. She placed some shoes for herself on the top of the stroller and continued to shop. As she found other pairs of shoes more appealing, she would exchange the other shoes for the shoes she had chosen previously.

Street also found some shoes and carried them in the same hand as her clutch purse. She carried some tissues in her other hand to use on the children. She found some socks for Heise's daughter and held them in the hand with the tissue.

Mr. Heise paid for his own shoes and told his wife he was going to the bank for the money. Heise and Street were at the front of the store at the time and continued to shop.

Wright, the loss prevention manager, then confronted Street and Heise. Wright twisted Street's arm behind her back and pinned her down on the cash register counter. Many customers were in the establishment at the time. Wright then yelled, "resisting arrest call 911 hurry. Resisting arrest." Wright and another employee then led Street and Heise to the office. Wright used foul language throughout the episode.

Shoe Carnival obtained summary judgment in light of Ind.Code 35–33–6–2:

(A) An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed the theft may:

(1) detain the person and request the person to identify himself;

(2) verify the identification;

(3) determine whether the person has in his possession unpurchased merchandise taken from the store;

(4) inform the appropriate law enforcement officers; and

(5) inform the parents or others interested in the person's welfare, that the person has been detained.

(B) The detention must:

(1) be reasonable and last only for a reasonable time; and

(2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs.

Indiana Code Subsection 35–43–4–2(a) defines theft as follows:

A person who knowingly or intentionally exerts unauthorized control over property of another person commits theft . . .

Probable cause to initiate a criminal prosecution exists where facts found on a reasonable inquiry would induce a reasonably intelligent and prudent person to believe the accused has committed the crime. *Duvall v. Kroger Co.* (1990), Ind.App., 549 N.E.2d 403. Probable cause is normally an issue for the jury's determination. *Id.* To be considered genuine for summary judgment purposes, a material issue of fact must be established by

sufficient evidence in support of the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Colbert v. Waitt* (1982), Ind. App., 445 N.E.2d 1000.

Wright's version of the events contradicts that of Street and Heise. Wright claims Street placed two pairs of shoes in her purse. He claims Heise gave Street a pair of shoes which Street placed in a diaper bag on the stroller. Wright claims Street placed some socks in her pocket and left them there, where he found them later. While in the office, Wright accused the two of stealing shoes.

■ Evidence that a person removed property from any place within a business premises at which it had been displayed or offered to a point beyond that at which payment should have been made constitutes prima facie evidence of intent to deprive the owner of any part of its value and that the person exerted unauthorized control over the property. Ind.Code 35–43–4–4(c)(2). The undisputed evidence shows that Street and Heise had possession of Shoe Carnival merchandise beyond the point of payment. Shoe Carnival claims that this evidence shows it had probable cause to detain Street and Heise.

The evidence most favorable the Street and Heise, however, shows that Shoe Carnival offers merchandise for sale beyond the cash registers, even on the sidewalk outside the store. The evidence most favorable to the nonmovants supports the inference that, although Street and Heise had possession of Shoe Carnival's property beyond the point of payment, they merely continued to shop for merchandise while Heise's husband went to the bank for more money. For example, in her deposition, Street stated she had held a pair of blue shoes and a pair of white socks in her hand but did not stop to pay for them because, "I wasn't paying yet." A reasonable person could believe that Street and Heise had not committed theft and were not attempting to commit theft and that Shoe Carnival did not have probable cause to believe otherwise.

■ Evidence that a person concealed property displayed or offered for sale or hire constitutes prima facie evidence of intent to deprive the owner of any part of its value and that the person exerted unauthorized control over the property. I.C. 35–43–4–4(c)(1). The term "conceal" means to hide, secrete, to keep out of sight, or prevent the discovery of an item. *See Dennis v. State* (1952), 230 Ind. 210, 217, 102 N.E.2d 650, 653 (crime of accessory after the fact). Wright contends that Street placed a pair of children's socks in her pocket and that he therefore had probable cause to detain her.

Street acknowledges that she put the socks in her pocket but only because the socks had been in her hand and she had reached briefly into her pocket to grab a tissue for the children. She had her purse and a pair of shoes in her other hand at the time. A reasonable person could conclude that Street did not conceal the socks but, despite having reached momentarily into her pocket for a tissue with the socks in her hand, possessed the socks in a manner not calculated to prevent their discovery. Again, a reasonable person could believe that Street and Heise had not committed theft and were not attempting to commit theft and that Shoe Carnival did not have probable cause to believe otherwise.

The State filed criminal charges against Street and Heise based upon the information Wright had submitted to the authorities. Based upon the information, a trial judge found probable cause to detain Street and Heise. At the request of the State, however, the trial judge dismissed the charges after the civilian witnesses, including Wright, had not appeared for trial. Shoe Carnival now claims that the judicial finding of probable cause in the criminal proceeding is dispositive of the existence of probable cause in the present case.

■ Shoe Carnival notes that a judicial determination of probable cause in a criminal proceeding may constitute prima facie evidence of probable cause in a subsequent action for malicious prosecution. Shoe Carnival contends that the same is true of a subsequent action for false imprisonment. Shoe Carnival notes that the prima facie

case may be rebutted by evidence that shows the finding of probable cause was induced by false testimony or fraud. *Lazarus Department Store v. Sutherlin* (1989), Ind. App., 544 N.E.2d 513, 520, *trans. denied.* Shoe Carnival claims that the present case contains no such evidence and that its established prima facie case remains unrebutted.

Despite the validity of the authority just mentioned, this Court has explained that:
> the finding of the examining court is, at most, but *prima facie* evidence of the existence of probable cause, and that to rebut this *prima facie* case it is not necessary to attack that judgment as procured by fraud. All that can be required on trial is the exhibition of such a state of facts as will fairly rebut and overcome this finding in the minds of the jury.

*Louisville, New Albany and Chicago Railway Co. v. Hendricks* (1895) 13 Ind.App. 10, 40 N.E. 82, *reh. denied,* 13 Ind.App. 10, 41 N.E. 14 (malicious prosecution case).

In the criminal proceeding, the trial judge based the probable cause determination on the evidence most favorable to both Shoe Carnival and the State. Shoe Carnival is now the movant for summary judgment in a civil case. As noted above, the evidence most favorable to the nonmovants supports the inference that Shoe Carnival did not have probable cause to believe that Street and Heise had committed theft or were attempting to commit theft. Inasmuch as the facts exhibited would fairly rebut and overcome the judicial determination of probable cause in the minds of a jury, a genuine issue of material fact exists for trial.

Finally, Shoe Carnival notes that Street and Heise signed "confessions" in which they admitted they had committed theft. The evidence most favorable to the nonmovants, however, supports the inference that the admissions were not voluntary but the fruits of coercion from Wright. He told Street she had better sign the paper or she "was going to regret it." He told Heise that, if she did not sign the document, then her "life would be a living hell." He told her that she had to sign the paper, that she had no choice. Street had asked to see an attorney, and Wright refused the request. The evidence of coercion distinguishes the present case from *Duvall,* 549 N.E.2d 403, in which the defendant had signed a shoplifting report admitting he had concealed the items and did not contend later that he had been coerced to do so or that he had not, in fact, concealed the items.

The present case contains genuine issues of material fact on the existence of probable cause. A trier of fact must resolve the differing versions of the truth at trial. Therefore, the trial court improperly granted summary judgment to Shoe Carnival on the claims of false imprisonment.

## II

■ To maintain an action for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages. *Rambo v. Cohen* (1992), Ind. App., 587 N.E.2d 140, 145, *trans. denied.* Shoe Carnival claims that no genuine issue of material fact exists about whether Wright published a defamatory communication.

■ A communication is defamatory *per se* if it imputes criminal conduct. *Rambo,* 587 N.E.2d at 145. If a communication is defamatory *per se,* then the plaintiff is entitled to presumed damages as the natural and probable consequences of the *per se* defamation. *Id.*

■ The determination about whether a communication is defamatory is a question of law for the court. *Rambo,* 587 N.E.2d at 145. The communication is to be viewed in context and given its plain and natural meaning, according to the idea it is calculated to convey to whom it is addressed. *Id.* The determination is to be presented to the jury as a question of fact only if the communication is reasonably susceptible of either a defamatory or non-defamatory interpretation. *Id.*

■ The evidentiary matter most favorable to the nonmovants shows that Wright twisted Street's arm behind her back and pinned her down on the cash register counter. Many customers were in the establishment at the time. Wright then yelled, "resisting arrest call 911 hurry. Resisting

arrest." Wright and another employee then led Street and Heise to the office. One could reasonably conclude that Shoe Carnival communicated to its customers and employees that Street and Heise were under arrest.

An arrest is the taking of a person into custody, that he may be held to answer for a crime. I.C. 35-33-1-5. From the communication that Street and Heise were under arrest, a trier of fact reasonably could infer that Wright meant they were being taken into custody so that they could be held to answer for a crime. We next consider whether the communication specifically imputes the crime of theft.

■ This court has stated, without citation to authority, that, while the false imputation of criminal activity clearly gives rise to a cause of action for defamation, the imputation must bear some reasonably close relation to the legislative definition of a crime. *Gibson v. Kincaid* (1966), 140 Ind.App. 186, 191, 221 N.E.2d 834, 837 (one Judge concurring, two Judges concurring with opinion). Our supreme court, however, merely has stated that it is necessary that the words uttered should be such as convey to the minds of the hearers an imputation of crime. *Seller v. Jenkins* (1884), 97 Ind. 430, 431. If the words used are such as to produce upon the minds of those who hear them an impression that the plaintiff was guilty of a crime, then they are actionable, although they may not fully describe an offense. *Id.*

In the case just cited, the Defendant had stated, in a colorful manner, that the plaintiff had taken his penis out and had urinated in the presence of two women. *See Seller,* 97 Ind. at 432. The court affirmed the verdict for the plaintiff and stated:

Taking all the language used into consideration, we think that it charges the commission of an act of public indecency by an indecent exposure of the person.

*Id.* at 432. The accusation had not mentioned the phrase "indecent exposure," and the words had not recited the elements of that offense.

In *Drummond v. Leslie* (1840), 5 Blackf. 453, the defendant had stated, "The receipt has been forged ..., but I do not say who forged it" and "the receipts ... are forged, but I ... will not say who forged them" and "Some one forged that receipt, but I do not say who forged it ... but [the plaintiff] can say who did it." *Id.* at 454. The court remarked:

The defendant contends that the words are not actionable, and that the judgment should therefore have been arrested; but we are of a different opinion. There is not, it is true, a directly affirmative charge, that the plaintiff had committed forgery; nor was that necessary. If the words were calculated to induce the hearers to suspect that the plaintiff was guilty of the crime, they were actionable; [citation omitted] and we think the words in question, taken in connection with the circumstances under which they are allleged [sic] to have been spoken, are of that character.

*Id.* at 455.

From the evidence considered in the light most favorable to the nonmovants, a reasonable trier of fact could conclude that Wright's words and actions amounted to a charge of theft against Street and Heise. *Accord Mains v. K Mart Corp.* (App.1988), 297 S.C. 142, 375 S.E.2d 311; *Torabi v. J.C. Penney, Inc.* (1983), Miss., 438 So.2d 1354; *Codner v. Toone* (1978), 224 Kan. 531, 581 P.2d 387; *Bennett v. Norban* (1959), 396 Pa. 94, 151 A.2d 476; *Hazelrigs v. J.M. High Co.* (1934), 49 Ga.App. 866, 176 S.E. 814. Thus, a genuine issue of material fact exists on the issue of whether the communications here were defamatory.

Shoe Carnival also claims that no publication occurred in the present case. The evidentiary matter, taken in the light most favorable to the nonmovants, shows Shoe Carnival communicated to its customers that Street and Heise were under arrest for theft. A reasonable trier of fact could conclude that the manner in which it did so fulfills the publication requirement. *Accord Montgomery Ward & Co., Inc. v. Cliser* (1972), 267 Md. 406, 298 A.2d 16.

A genuine issue of material fact exists on the issue of whether Show Carnival published a defamatory communication about Street

and Heise. The trial court therefore improperly granted summary judgment to Shoe Carnival on the claims of defamation.

### III

■ Compensatory damages are a prerequisite to recovery of punitive damages. *Sullivan v. American Cas. Co. Of Reading, Pa.* (1992), Ind., 605 N.E.2d 134, 140. As noted above, the trial court improperly granted summary judgment in favor of Shoe Carnival on the Heise's claims related to compensatory damages. Thus, the grant of summary judgment to Shoe Carnival on the issue of punitive damages is unsupported to the extent it relies upon the absence of a claim for compensatory damages.

■ To justify an award of punitive damages, there must be clear and convincing evidence which overcomes the presumption that the defendant's conduct was merely negligent or the result of some honest error. *Lazarus*, 544 N.E.2d at 527. Rather, punitive damages are recoverable only upon clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppression which was not the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other human failing. *Id.*

■ As related above, a reasonable trier of fact could conclude that Shoe Carnival did not, in fact, have probable cause to detain Heise. Also, a reasonable trier of fact could conclude that Wright verbally abused Heise during the detention. Further, as noted above, the evidence most favorable to Heise supports the inference that her "confession" to having committed theft was not voluntary but was a result of coercion from Wright. A genuine issue of material fact exists about whether Shoe Carnival engaged in oppression in the sense required for punitive damages.

■ Further, malice may be inferred from the institution of criminal prosecution without probable cause. *Lazarus*, 544 N.E.2d at 527. Again, the evidence supports the inference that Shoe Carnival did not have probable cause to detain Heise. Nonetheless, Wright completed and filed against Heise an information which charged her with criminal conversion. Shoe Carnival's witnesses did not appear for trial, however; and the trial court dismissed the charge. Those facts establish a genuine issue of material fact about whether Shoe Carnival acted with malice when it instituted the criminal charge.

A genuine issue of material fact exists on Heise's punitive damage claim. The trial court therefore improperly granted summary judgment to Shoe Carnival on the issue.

Judgment reversed.

BAKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent. In order to succeed on their false imprisonment claims, Street and Heise had to establish the absence of probable cause for their arrest. Probable cause for criminal prosecution exists when facts found on reasonable inquiry would induce a reasonably prudent and intelligent person to believe that the accused committed the charged crime. *Duvall v. Kroger Co.* (1990), Ind. App., 549 N.E.2d 403, 405. Although probable cause is generally a factual question reserved for the jury, it is a question of law when the facts are undisputed. *Id.* at 405–406 (citing *Costello v. Mutual Hospital Ins. Inc.* (1982), Ind.App., 441 N.E.2d 506, 509, *reh. denied, trans. denied* ).

In this case, the facts relevant to the issue of probable cause are undisputed. It is undisputed that Street concealed merchandise and that Heise observed her doing so. It is further undisputed that both carried merchandise beyond the point of payment. These acts constitute prima facie evidence that they committed theft; that is, they exerted unauthorized control over and intended to deprive Shoe Carnival of the merchandise. IND.CODE § 35–43–4–4(c) (1993). These undisputed facts alone are sufficient to constitute probable cause, rendering the detention lawful and defeating Street and Heise's

false imprisonment claim.[1] *Duvall, supra,* at 407.

Further, the trial court in the criminal proceeding found probable cause for Street and Heise's arrest. Judicial determination of probable cause constitutes prima facie evidence of probable cause in this civil action. *See Lazarus Department Store v. Sutherlin* (1989), Ind.App., 544 N.E.2d 513, 520, *trans. denied* (determination of probable cause in criminal case prima facie evidence of probable cause in subsequent malicious prosecution action). Street and Heise could rebut this only by presenting evidence that the probable cause determination was induced by false testimony or fraud. *Id.*

Although Street and Heise contend that Wright's conduct was inappropriate and that he coerced them into signing confessions, they do not present evidence to dispute Wright's statements regarding the concealment of merchandise beyond the point of payment. Accordingly, they did not successfully rebut Shoe Carnival's prima facie evidence of probable cause. Because the facts demonstrating the existence of probable cause are undisputed, summary judgment was properly entered on this count. The trial court should be affirmed.

I also dissent to reversal of summary judgment on Street and Heise's defamation claim. Although the Majority correctly states the general rule that determining whether a communication is defamatory is a question of law, the Majority goes on to conclude that because the communication at issue here is reasonably susceptible to either a defamatory or non-defamatory interpretation, it is a fac-

tual issue precluding summary judgment. Maj. op. at 1058–1059 (citing *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140, 145, *trans. denied* ). I disagree.

Street and Heise argue that statements by Wright were defamatory per se because his statements imputed to them commission of a crime. Upon detaining Street and Heise in the store, Wright made the following statement: "resisting arrest call 911 hurry. Resisting arrest." This communication is not reasonably susceptible to a defamatory interpretation. In order for the false imputation of criminal activity to give rise to a cause of action for defamation, the imputation must bear a reasonably close relation to the legislative definition of a crime.[2] *Chestnet v. K–Mart Corp.* (1988), 529 N.E.2d 131, 135, *trans. dismissed.* The mere statements "resisting arrest" and "call 911" bear no relation to the legislative definition of any crime; thus, they are not defamatory per se. Because Wright's statements are not reasonably susceptible to a defamatory interpretation, summary judgment on this issue was appropriate.

As the Majority correctly states, compensatory damages are a prerequisite to an award of punitive damages. Maj. op. at 1060 (citing *Sullivan v. American Cas. Co. of Reading, Pa.* (1992), Ind.App., 605 N.E.2d 134, 140). Because I would conclude that Shoe Carnival was entitled to summary judgment on the false imprisonment and defamation claims, it logically follows that Shoe Carnival would pay neither compensatory nor punitive damages on those claims. Thus, summary judgment was proper on the punitive damage claim.

1. The Majority relies on Street and Heise's explanation for concealing merchandise beyond the point of payment to create a genuine issue of material fact in this case. Although Street and Heise's explanation for their conduct is relevant to whether they actually committed theft, it is not material to the issue of probable cause. Their undisputed conduct alone, regardless of the explanation therefor, is sufficient to constitute probable cause and precludes a false imprisonment claim. *See* IC 35–43–4–4(c), *Duvall, supra.*

2. The Majority rejects this well-established rule based on *Seller v. Jenkins* (1884), 97 Ind. 430,

431, in which our supreme court stated that "[i]t is not necessary that the words uttered should be such as to describe the offence imputed by them with technical accuracy." *Id.* at 431. The defamatory statement in *Seller* was that Seller "took his old root out and pissed before the women." *Id.* at 432. Although this statement does not technically describe the offense of indecent exposure, it does bear a reasonably close relationship to that crime. In contrast, the statement at issue in this case is vague and ambiguous, and does not bear a relationship to any particular crime.

Because I would affirm the trial court in all respects, I dissent.